Next case is U.S. v. Cirino, 24-714. Attorney Barrett, whenever you're ready. Thank you, Your Honor. May it please the Court, Kelly Barrett from the Federal Defender Office for the District of Connecticut on behalf of Mr. Louis Cirino. In 2019, knowing everything there was to know about Mr. Cirino's history and characteristics and nature and circumstances of the offense, the sentencing judge, then Judge Bryant, sentenced Mr. Cirino to 135 months incarceration at the very bottom of the then applicable advisory guidelines range of 135 to 168 months. In 2024, in denying Mr. Cirino's request for a status points reduction under Guideline Amendment 821, the new district court judge, Judge Oliver, had before him all of the very same facts and applying the same facts declined to reduce the sentence at all. And in doing so, effectively resentenced Mr. Cirino to a sentence in the middle of the now applicable advisory guidelines range. Does that suggest, I mean, is your argument that the first time around he got 135 because it was the lowest available sentence without going below the guidelines range? Or is it possible that the 135 represented what the sentencing judge thought was the sentence that best fit an application of the 3553 factors? That's theoretically possible, but in this particular case, Judge Bryant tethered her sentence to the bottom of the guideline range. And in an imposing sentence, specifically said she was giving Mr. Cirino the sentence at the bottom of the range because of the fact that he had broken the logjam among co-defendants and had encouraged them to plead guilty. But that's taking into consideration the 3553A factor, right? Yes. Saying that is fine, but it's within the rubric of 3553A, right? And 3553A says, you know, least serious sentence, which is sufficient but not greater than necessary, blah, blah, blah. So doesn't that mean that this was her determination that this was, just following up on Judge Robinson's question, this was the appropriate sentence in light of the 3553A factors? Not just that it was the bottom of the guidelines. Yeah, it was, but that's not the only reason why it was imposed. It wasn't the only reason, but she tethered it specifically in announcing that she was going with the bottom of the guideline sentence to the fact that the range was 135 to 168 at that time. And considering all of the facts that Judge Bryant had, including the aggravating factors, but interestingly not considering the fact that Mr. Cirino broke the logjam, the new district court judge, Judge Oliver, declined to, not only declined to reduce the sentence at all, but also declined to explain why that in 2019 a sentence at the bottom of the range, 135 months, was sufficient. But now, in 2024, a sentence in the middle of the range would be necessary. But isn't the implication that any time in an 821, you know, in an 821 context, and there's been a lot of cases, I know because I'm a district judge, that any time in an 821 context where the district judge's original sentence is the bottom of the guidelines, and then there's a change, so you're eligible for a lower sentence, no question about that. But you can't, you have to go lower because, well, after all, the last time around you got the bottom of the guidelines. So don't you have to get the bottom of the guidelines again? It almost suggests that you have to, that the judge, whether it's a different judge or the same judge, has to go to the new, the bottom of the new guideline range or the bottom of the amended guideline range because you did it before. It's not that the judge would have to do it before. The statute clearly gives the district court judge the discretion to decide whether to go lower. So why isn't this within Judge Oliver's discretion to consider all the relevant factors? It is within the judge's discretion to consider all the relevant factors. But the reason why the judge erred in this particular case is for two reasons. One, he did not consider that the very purpose of the amendment was to correct the way that the guidelines handled recidivists under court supervision, which was to bring the guidelines into conformity with empirical data. And also he didn't explain why, in emphasizing all of the same aggravating factors that Judge Bryant had before her, which yielded a bottom of the guidelines range, he didn't explain why now a middle of the guidelines range was necessary. So are you saying, let me address the first of those two things, or ask you a question about the first of those two things. Are you saying that because Amendment 821 eliminated the status points for committing an offense while, in this case, on supervised release, that in every instance a district judge is not allowed to consider that recidivist conduct in deciding whether to grant an application under Amendment 821? In other words, it's just off the table. It gave rise to the two points. We don't have those two points anymore. That's it. You can't consider that conduct. It almost seems like that's what you're saying. I'm not saying... So I'll let you answer that, but just the flip side of it is, would it ever be permissible to consider the recidivist conduct that gave rise to the two status points, which we all agree don't apply anymore. Is it ever permissible for the judge, considering an 821 motion, or 3582C motion, whatever, but under Amendment 821, is it ever permissible to consider that conduct, the conduct that gave rise to the two status points that are no longer in play? It's permissible because a judge can consider anything under the 3553 factors. The problem is that in this particular case, the district court judge heavily relied on the fact that he was on supervision, and in numerous instances, in a short analysis, emphasizes the fact that he was on supervision. And what the court should have done is distinguish why, unlike every other person that qualified for this amendment. And in fact, not only was it necessary to qualify, it was actually a requirement to even be eligible for the reduction, was to be a recidivist on a form of court supervision. The court would have to explain why this is different than everyone else that qualifies for the amendment. Otherwise, the amendment becomes a nullity, and what's the purpose for the amendment? The commission took the extraordinary step with this particular amendment to make it retroactive. And it did that for the purpose of increasing fairness in sentencing and to bring the guidelines into conformance with empirical data. So to rely heavily, or almost exclusively. But not exclusively, right? I mean, that seems to me that what you just said means we evaluate the whole bucket of factors that the district court considered in deciding here whether a reduction was appropriate. Maybe the argument would look different if you could have completed that sentence by saying solely. But that's not what we have here. We have the judge taking into account a host of factors. And I think talking about the level of recidivism and not just the fact of recidivism. The problem in this particular case is that every single one of those factors was known to Judge Bryant at the time of the original sentencing in 2019. And she still specifically gave Mr. Serino's sentence at the low end of the range. And she did that for a particular reason, because he broke the logjam. That was a fact that Judge Oliver in 2024 did not consider. So let's say Judge Bryant had given her a few months below the guideline range. And now the sentence ends up being within the guideline range. Could the judge conduct an analysis like Judge Oliver here, enrolling on the 821? The problem, the judge can conduct the analysis that he did. My contention is that it's illusory, because it's analyzing the same factors without explaining why now an effectively higher sentence is necessary. When in 2019, a sentence at the low end was sufficient. In other words, if the judge had done the same. It's not a higher sentence. It's the same sentence. Not numerically, but the Sentencing Commission made an adjustment. Because when sentencing, judges are relying on the guidelines as Judge Bryant did. But you always consider the guidelines as your starting point. And so I guess just to sort of repeat my initial question. Under your theory, I think it doesn't really matter that it was a bottom of the guideline sentence. Whatever the sentence is, you're saying, right? Because if the original sentence had been a little bit below the guidelines, and now it's within it. You have to be a little bit below it or explain why you're not a little bit below it. I mean, what would be the limiting principle to a bottom of the guideline sentence as opposed to any sentence? Hypothetically, I agree. But in this particular case, Judge Bryant was very specific in the oral transcript at 42 to 44 minutes. As to why she was tethering this particular sentence to the bottom of the range. And her starting point in her analysis was the guideline range. And then she specifically announced the sentence as being one that was at the bottom of the range. Because in spite of all of the aggravating factors, Mr. Serino had broken the logjam. Which she described as laudable and to be given significant weight. Judge Oliver, in considering whether or not to reduce, didn't consider that fact. Doesn't that initial sentence already reflect a reduction? She's saying this is less than I might otherwise give you because of this factor. That doesn't necessarily mean she would even have given more or less if she could have. She could have gone below the guidelines if she thought below the bottom of the guidelines was an appropriate way to recognize this factor. She went as low as she felt it was appropriate to. She didn't say that, though, as many district court judges in our district do. If their decision is not tethered to the guidelines, they will explicitly say, my decision is not being driven by the guidelines. Instead, she picked a point at the bottom of the guidelines because that was her orientation in announcing the sentence. Let me ask you a hypothetical question, which is hypothetical because it didn't happen here, but I'm kind of thinking of the next case, right? The other, well, there's six districts in this circuit. Let's say Judge Oliver had said, and he did, but let's say he had said, you know, I read the transcript of Judge Bryant's, the sentencing transcript of when Judge Bryant sentenced you the last time. And she relied on this breaking the law jam piece. But I just think that's nonsense. I think that's just crazy. That doesn't justify a – that's not a mitigating factor in my opinion. So I'm rejecting that, and I'm rethinking it from the get-go, and I have the authority to consider the 3553A factors. I also am required – not the authority. I'm required to consider the 3553A factors. I'm also required to think about any concern about danger posed to the community by an early release. In other words, releasing you earlier than you would otherwise be released. But that factor, I don't care about, means nothing to me. Would that be reversible error? No, that would be fine because then we would know that the judge considered that fact, and I might not agree. So is it just that you don't know whether he considered it? I mean, it just seems to me that – I'm struggling with it. It seems to me you're arguing, you know, this was a factor – and it was a factor. No one disputed that. This is a factor. It was considered, and it was the reason, or at least an important reason, why Judge Bryant gave the sentence that she gave. And therefore, that – I think you're saying that that should bind Judge Oliver. Perhaps this is an odd situation in that you have a different district judge, but that that determination should bind Judge Oliver as well, and that he should be thinking, oh, this is an important factor, and now I have a lower bottom of the guideline range. So you know what? I'm going to go to the low end because that's consistent with what Judge Bryant did. But are you arguing that? Is that what you're arguing, that he's bound by that? No. I'm not saying he's bound by it. I am saying, though, under – this is kind of under the Supreme Court's Chavez-Mesa decision that distinguishes between when someone is the original sentencing judge versus there's a new sentencing judge. There is more explanation that the new judge has to do. So what I'm saying is not that he was bound by what Judge Bryant did, but if he is emphasizing throughout his analysis every single fact that it was an aggravating fact that was the same thing Judge Bryant had and also emphasized and gave a bottom of the guideline sentence and now takes every single one of those same aggravating facts, omits the fact that Judge Bryant thought was most persuasive to give a bottom of the guideline sentence, and now comes to a place which is, in effect, in the middle of the range, I'm saying that he has to explain why that analysis is now – why that sentence is now necessary because that's the sentencing standard. It has to be necessary. And in 2019, a different judge thought differently, or at least we don't know if Judge Oliver has considered that. And so what I'm saying is not that he's bound, but there is a different level of analysis, and that analysis didn't happen here. We're going to have a chance to hear from you again, so we'll go ahead and move to the government at this point. Mr. Cummings. Good morning, and may it please the Court. My name is Daniel Cummings, and I represent the government in this appeal. The district court acted well within its broad discretion in denying the defendant's motion for a sentence reduction under Amendment 821 to the sentencing guidelines, evaluating as it had to and appropriately weighing the 3553A factors and the defendant's post-sentencing conduct. First, with respect to the 3553A factors, the district court found that the defendant's conduct and his crime was serious and harmful to his community. It emphasized that the defendant operated a multi-kilogram cocaine distribution drug operation, and it highlighted his awareness of the harm that he was causing to his community, his customers, and their children. You're describing an analysis of the sentence as if it were the first time, and I'm wondering what your reaction is to the argument that I think I'm hearing, which is that we have to be cognizant of the original sentence in evaluating whether the decision as to how to re-sentence is supported in light of the change in the guidelines range. Yes, Your Honor. Is this just a blank slate and we don't even think about the original sentencing and the rationale for it? So I think the record in this case shows that Judge Oliver did consider Judge Bryant's reasoning. Does he have to, though? I guess that's my question. I don't know that he has to. I think he has to do an independent weighing of the 3553A factors, and in that regard he is free to diverge from her reasoning. In other words, he could say, I don't agree with her reasoning. Yes, Your Honor. The question I asked counsel, he could have said a really important reason for the bottom of the range was the fact that he, quote, broke the law, Jim, and I've heard that term many times before. But I just don't think it's a good reason, and so I'm going to ignore it. You're saying he could have done that. He could have done that. But what counsel is saying is, but he didn't say anything about it. He just, you know, this is the problem. There's nothing in the record indicating that he considered it at all, one way or the other. Isn't that, shouldn't he have? I think that's what counsel is saying. I think if we take that to its logical conclusion, then that would really put district courts in a position where they are expected to go through the original sentencing court's comments of sentencing and say, I agree with this, I don't agree with that, I agree with this, I don't agree with that. Well, for what it's worth, I think district judges do do that. When they're the same district judge, they go back and they review their notes or whatever, the record or whatever they have, and they say, well, why did I do this the first time? Oh, okay, I see what the important factors are. Let me see what I'm going to do this time. You know, why wouldn't you do that? What's different about this, of course, is it's a different judge. But there was a record from the first time. There was, and Judge Oliver in his written decision specifically quoted Judge Bryant's reasoning in certain areas, which shows that he did look at the reason why she imposed the sentence she did, and he highlighted the facts that he thought was important. I think this court, particularly when it comes to- Don't you think that original sentence, especially in the case of a new judge maybe, maybe a new judge or not, anchors the 3553A analysis under 821? Don't you think it serves as an anchor? And so if, so I guess question one. Question two is if it does serve as an anchor, should the 821 judge take account of what the original judge specifically spoke to, not just any factor, but specifically spoke to as the reason for the bottom of the guidelines? I don't think it anchors the sentence. I think that certainly some judges will do proportional reductions unless there's a reason not to. I think the only requirement that the resentencing, or I'll say the judge who considers the motion to reduce the sentence has to do is weigh the 3553A factors. And in doing that, they are obligated to weigh them as they would weigh them, to give an independent assessment of those factors. And in this case- Is there anything about anchoring in 3582C2 or in Section 1B1.10 of the guidelines? No, Your Honor. I don't think so. So Congress didn't say to do it. Commission didn't say to do it. Why would you do it? Yes, and that would be our- That's a different question. You're free to do it. Yes. Or you're required to do it. That's a different question. Certainly some judges have done that, and that's fine as long as they go through the requirements that they have to consider in this case. In this case, Judge Oliver's written decision shows that he did comply with what Amendment 821 required. And he did review Judge Bryan's original sentencing decision because he specifically quoted it in his memorandum order. Can I ask what the argument counsel makes about everyone who's applying under 821 or qualifies as a recidivist, and so there's something kind of logically counter to relying on the same recidivist conduct as a basis to deny reduction? Yes, Your Honor, and I think you had made the point that it's not so much the fact that there was recidivism as much as the nature and the circumstances of the recidivism. What Amendment 821 essentially does is it takes it out of the guidelines calculation, so it's no longer a starting point where the district court has to consider it. That doesn't mean the district court can't consider it. And, in fact, I think the district court has to consider it because it's implicated by a number of the 3553A factors, specifically the nature of the circumstances of the offense and the need to specifically deter defendants. So in your view, not what happened here, but if Judge Oliver had relied solely on recidivism as the basis for his decision, would that be error? No, I think it would depend, Your Honor. I think as long as the district court explains why the recidivism is a heavily weighed factor in its analysis, this certainly, I think, recidivism alone could be enough, but it would really depend if the judge… But what if the district judge said, you know, I know the commission has eliminated the two status points in calculating criminal history. I know that. But I disagree with it. I just think it's a bad idea. By the way, there are a lot of people that didn't say they disagree with it. My understanding is that it was not unanimous. I think it was unanimous on the commission, but making it retroactive was not unanimous. In any event, let's say the district judge says, I'm not persuaded by that. I know I have to take the two points out, but I'll take them off. I'm not changing anything about the sentence because I am going to consider that particular fact that this crime was committed while the defendant was on supervised release. Can you do that? You can, Your Honor. So here I think this court has held that district courts are permitted to disagree with the policy positions of the sentencing commission. And I think, in fact, in some guideline cases, there's some encouragement to carefully scrutinize application of the guidelines. So here I think a district court would be allowed to say I disagree with the policy underlying the amendment. And as long as the district court goes through the required steps of then assessing each of the 3553A guidelines and weighing them appropriately, that would not be error. Continuing after weighing the seriousness of the offense and the harm it caused, the district court turned to the defendant's criminal record, which it also found to be extensive, and weighing against a reduction in sentence. And then although it didn't need to, it considered the defendant's post-sentencing conduct, which included a BOP citation for escape, which the district court weighed as significant and weighing against reducing the defendant's sentence. And I'll note that the district court also noted the accomplishments of the defendant, but that balancing test was committed to the discretion of the district court. The defendant contends that the court abused its discretion in considering the defendant's recidivism, but as we discussed, it's not so much the fact of the recidivism as much as it is the nature and the extent of it. I see that I'm almost out of time, and seeing no other questions, I'll wrap up. Because the district court was committed with the discretion to weigh the 3553A factors and make a determination after considering the defendant's post-sentencing conduct as to whether a sentence reduction was warranted, this court should affirm Judge Oliver's order denying the defendant's motion for a sentence reduction. Thank you. We'll hear from Attorney Barrett. Turning to the disciplinary ticket issue, the district court did not base its decision on the existence of one disciplinary ticket. If it had, it would have said that. And in fact, it didn't actually say in the decision that it was weighing that heavily. It also would have addressed whether an incremental reduction would have been appropriate as opposed to a full lockstep reduction, as many district court judges in the District of Connecticut have done when people have disciplinary tickets. This reference to a disciplinary ticket was an afterthought that occurs at the very end of the analysis and half a sentence in the same sentence that the court also commends Mr. Serino for the programming that he accomplished. It's part of a sentence in which the court concludes that the post-sentencing conduct overall weighs against a reduction in the sentence and cites the good stuff but then cites the escape citation. What more would the court need to say for us to understand that to be a factor the court relied on? I think the court should have said why it wasn't considering any. In this case, this would be a very different case if the court reduced but didn't reduce full lockstep to 121 months. Instead said, I'm going to do a reduction. I'm not going to give a reduction to the bottom of the guidelines because of this ticket and I'm essentially going to dock him X number of months for that conduct. That analysis didn't happen to the extent that the district court did in fact base it. I'm puzzled by that. I mean, we don't typically require that kind of mathematical granularity. I'm assigning two months for this thing and one month for this thing. It's a little more holistic, isn't it? It is holistic, but in this case, that is the only new fact present here. So every other fact… I mean, escape seems like a pretty bad new fact. Actually, though, Your Honor, if Mr. Serino had been charged with the federal crime of escape as the U.S. Attorney's Office often does, the guidelines for that charge in this case would have called for a range of zero to six months imprisonment. And in this case, Judge Oliver essentially docked 14 months off of the reduction, which is actually more than Mr. Serino would have faced if he had been actually charged with the new crime and sentenced under the guidelines to that. So it was a very significant penalty on top of the fact that he had already been docked 40 days of good time credit, which increased the sentence by another 40 days. So essentially over 15 months caused by this escape ticket. Well, no, that assumes, I think, the premise of your whole argument, which is that you go in with the bottom of the newly calculated guidelines range as the presumptive sentence and then anything above that becomes a penalty. I'm not saying that it's presumptive. I'm saying that here Judge Bryant did tether her sentence to the bottom. Judge Oliver didn't explain why, given everything in the past, the bottom was no longer acceptable and didn't say that that reason was because of this ticket. And there were a number of other very positive facts in the record about Mr. Serino. And I think we've kept you up here a lot longer than your time, so I'm sorry about that.  But thank you for your arguments. Thank both of you. Appreciate it. We'll take it under advisement. And with that, we'll conclude today's arguments and adjourn the proceedings.